UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

AUG 3 1 2017

CLERK, U.S. DISTRICT COURT.
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

JIM BRITE, TDCJ No. 1471684,      *
    *
    *
          Petitioner,     *
    *     CIVIL NO. SA-16-CA-00540-OLG
v.     *
    *
LORIE DAVIS, Director, Texas     *
Dep't Of Criminal Justice,     *
Correctional Institutions     *
Division,     *
    *
          Respondent.     *

## MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 2254, Jim Brite, a/k/a "Jimmy Acosta Brite," an inmate in the custody of the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID"), has filed a Motion for an Evidentiary Hearing (Docket Entry "DE" 17), along with his application for a writ of habeas corpus (DE 1), challenging the constitutionality of his underlying convictions for three counts of indecency with a child (Counts I, III and VI), one count of aggravated sexual assault (Count II), and one count of sexual assault (Count IV). Petitioner, who was sentenced to four terms of twenty years' imprisonment and one term of life imprisonment, maintains that 1) he is actually innocent and trial counsel was ineffective for failing to challenge prosecutorial misconduct; 2) trial counsel was ineffective for failing to raise a collateral estoppel objection to extraneous-offense evidence, failing to know the

law regarding the victim's age, and failing to secure the testimony of Mary Ann Harris, a material witness; and 3) his prosecution on the second and third counts violated double jeopardy. (Id.). As required by Rule 4 of the Rules Governing Section 2254 Cases, the Court has conducted a preliminary review of the petition. Having considered the habeas application (DE 1), Respondent's Answer (DE 13 and 21), Petitioner's Traverse (DE 16 and 22), and the applicable law, the Court is of the opinion the petition should be **DENIED**. (DE 1). Petitioner's Motion for an Evidentiary Hearing is also **DENIED**. (DE 17).

## I. Procedural Background

In November 2007, Brite was convicted of three counts of indecency with a child by sexual contact, one count of aggravated sexual assault of a child, and one count of sexual assault of a child. *State v. Brite*, No. 2006-CR-5362 (186th Dist. Ct., Bexar County, Tex., Nov. 2, 2007); (DE 11-15 at 192-202). He was given four twenty-year sentences, and one life sentence, all to run concurrently. *Id.* Brite's convictions and sentences were affirmed on direct appeal by the Fourth Court of Appeals in June of 2009. *Brite v. State*, No. 04-07-820-CR, 2009 WL 1617741 (Tex. App.—San Antonio, June 10, 2009, pet. ref'd). Brite was subsequently granted the opportunity to file an out-of-time petition for discretionary review by the Texas Court of Criminal Appeals ("TCCA"), which the state court eventually

2

refused. *Brite v. State*, No. PD-1706-13 (Tex. Crim. App. July 23, 2014). He then appealed his case to the United States Supreme Court, but his petition for writ of certiorari was denied on January 12, 2015. *Brite v. Texas*, 135 S. Ct. 963 (2015).

Almost a year later, Brite filed a state habeas corpus application challenging his convictions and sentences. *Ex parte Brite*, No. 79,647-02 (Tex. Crim. App.) (DE 12-17, pg. 394). In two separate pleadings to this Court, Brite asserts that he filed his application on January 7, 2016, by depositing it in the prison mail-box. (DE 4, pgs. 2-4; DE 16, pg. 3). However, records provided by Respondent Davis indicate that Brite placed his application in the prison mailing system on January 8, 2016. (DE 13-1, pg. 28). Brite's state habeas petition was subsequently denied without written order by the Texas Court of Criminal Appeals on June 1, 2016. (DE 12-13). Brite filed the current federal habeas petition on June 7, 2016. (DE 1, pg. 10).

## II.  **Factual Background**

The factual background was summarized as follows by the Fourth Court of Appeals in its Memorandum Opinion, dated June 10, 2009:

> At the time of trial, Nancy M., the mother of S.M., who was one of the complainants, was separated from her husband Rick M., who was S.M.'s father. Brite was the boyfriend of

3

S.M.'s paternal grandmother. Nancy M. initially liked Brite, and he attended numerous family outings. In October or November of 2005, Nancy M. and Rick M. were having marital problems, and Rick M. moved to his mother's house. S.M. and her siblings would visit Rick M. at their grandmother's house, and they stayed the night approximately five times. In December of 2005, S.M.'s younger sister, C.M., who was three or four years old, told Nancy M. something that made her concerned. Nancy M. asked S.M., who was approximately seven years old, about the information, and S.M. told her that "she was sleeping and that she woke up and [Brite] touched her middle." Nancy M. set up an appointment for S.M. to see a counselor, Mary Ann Harris, on December 28, 2005. After Harris spoke with S.M., she instructed Nancy M. that she needed to call child protective services and make a police report. Harris referred Nancy M. to Child Safe where S.M. was interviewed on videotape and medically evaluated. S.M. started counseling with Marianne Torres and continued in counseling for a little over a year. Nancy M. did not immediately call the police, but eventually both Nancy M. and S.M. gave statements to Detective Lisa Miller. Nancy M. testified that the incident made S.M. scared and angry and caused her to have trouble sleeping. Nancy M. admitted that her separation from Rick M. also could cause S.M. to be angry and have trouble sleeping. Nancy M. further stated that S.M. would express anger towards Rick M. because he would yell at S.M. and sometimes curse her with profanity.

S.M., who was nine years old at the time of trial, testified that in October or November of 2005, she was sleeping on the couch at her grandmother's house, and Brite "put his hand in [her] pants" and touched her private part, which she stated was her vagina, underneath her pan ties [sic]. S.M. stated Brite's hand was touching the skin of her private part. Although S.M. told Brite to stop, he continued touching her. S.M. said when Brite touched her, his hand would stay still. S.M. did not tell anyone because she thought her mom would get mad at her. S.M. said Brite touched her about four times. S.M. recalled one time when Brite was eating hot wings, and "he touched [her] there and it started to burn." Brite told her to get a washcloth and put it on her "middle" so it would stop burning. S.M. said she told her little sister because she was afraid to tell her mom. S.M. testified that no one told her to say bad things about Brite or told her to make up stories about him because they were mad at him. In response to whether

Brite's "fingers were on the outside of her private part or something else," S.M. responded that she did not remember. Detective Lisa Miller took Nancy M.'s statement and sent S.M. to Child Safe for a medical evaluation and interview. On March 6, 2006, Detective Miller interviewed S.M. and later interviewed Brite on March 26, 2006. Detective Miller testified that Brite did not respond directly to her questions but qualified his answers. For example, Brite would respond that he "cannot see myself doing that" or "I don't remember doing that." During the interview, Brite did corroborate that the family ate hot wings on the night of one of the alleged incidents; however, Brite told Detective Miller that S.M. got the sauce on her hands when she cleaned up the kitchen and later complained that she was burning after she went to the restroom. Brite further stated that he examined S.M., determined that she must not have washed her hands before using the restroom, and instructed her to go wash her hands and clean herself with a wash rag. Brite explained that he examined her to see if something had bitten her.

After Detective Miller turned S.M.'s case over to the district attorney's office for their review, she was contacted by Brite's daughter, A.B., who subsequently came to the station for an interview regarding sexual offenses Brite committed against her. Based on that interview, Detective Miller referred A.B.'s case to the district attorney for aggravated sexual assault of a child.

Nancy Kellogg, a pediatrician who specializes in treating child sexual abuse victims, testified that S.M. told her she was asleep on the couch when Brite put his hand inside and it felt uncomfortable. S.M. was anxious and difficult to interview because she did not want to elaborate on details. Dr. Kellogg further stated that S.M. indicated through her gestures that Brite's hand was inside of her private. Dr. Kellogg testified that S.M.'s description of the burning also indicated to her that Brite had penetrated S.M. with his finger. Dr. Kellogg testified that S.M.'s physical exam was normal which is most common when examining children in this context.

A.B. testified that when she was six years old, Brite, her father, placed his penis between her legs. Although Brite tried to place his penis inside her vagina, she told him it hurt, and he stopped. He continued, however, rubbing his penis in between her legs. A.B. testified that Brite

would do this to her at least three or four times a week. Brite also touched A.B.'s vagina with his fingers a lot and placed his mouth on her vagina at one point. These incidents continued after September 1, 1987, until her parents divorced when she was around fourteen years old. When A.B. was in third grade, she was called to the counselor's office and told the counselor about Brite's actions. Child protective services and the police were called. A.B. stated that the family went to counseling for about a year after she told the counselor. After the counseling, Brite started fondling A.B. again, and Brite continued placing his sexual organ between A.B.'s legs and touching her sexual organ with his sexual organ. After her parents' divorce, Brite attempted to touch A.B. when she was seventeen; however, she stopped him. A.B. was afraid to call the police because nothing happened the other time they were called. When asked why she finally decided to pursue charges against her father, A.B. stated Nancy M. told her about the incident involving S.M. A.B. further stated, "I just don't want him to do this to anybody anymore."

*Brite*, 2009 WL 1617741, at *1-3.

## III. **Standards of Review**

### A. **Review of State Court Adjudications**

Brite's federal petition is governed by the heightened standard of review provided by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (*citing Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (*citing Yarborough v.*

*Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Brite must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

Furthermore, except for the narrow exceptions contained in § 2254(e)(2), a habeas petitioner is precluded from further factual development in federal court and must rely on the evidence presented to the state court when challenging a state court finding. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). Reasoning that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court," *Pinholster* explicitly held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id*. Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review" and this Court's review "is limited to the record in existence at the time [of the state court decision], i.e., the record before the state court." *Id*.

**B.  Review of Sixth Amendment Claims**

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel ("IATC" claims) under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense.  466 U.S. at 687-88, 690.  According to the Supreme Court, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

In determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (*quoting Strickland*, 466 U.S. at 690).  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003).  As

the Supreme Court explained, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. For this reason, every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689; *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.") (citations omitted). Accordingly, there is a strong presumption that an alleged deficiency "falls within the wide range of reasonable professional assistance." *Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (*quoting Strickland*, 466 U.S. at 689).

Further, to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## IV.  **Analysis**

Respondent initially contends that Brite's federal petition is barred by the one-year limitation period of 28 U.S.C. § 2244(d) by one day. Under the AEDPA, a state prisoner has one

10

year to file a federal petition for habeas corpus, beginning, in this case, from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *Palacios v. Stephens*, 723 F.3d 600, 604 (5th Cir. 2013). In the case of a petitioner who pursues direct review all the way to the Supreme Court, the judgment becomes final at the "'conclusion of direct review'—when [the] Court affirms a conviction on the merits or denies a petition for certiorari." *Gonzales v. Thaler*, 565 U.S. 134, 150 (2012). Here, Brite's conviction became final January 12, 2015, the date the Supreme Court denied his petition for writ of certiorari. As a result, the limitations period under § 2244(d) for filing his federal habeas petition expired a year later on January 12, 2016, unless it is subject to either statutory or equitable tolling.

Brite does not satisfy any of the statutory tolling provisions set out in § 2244(d)(1). There has been no showing of an impediment created by the state government that violated the Constitution or federal law and prevented Brite from filing a timely petition. 28 U.S.C. § 2244(d)(1)(B). There has also been no showing of a newly recognized constitutional right upon which the petition is based, and there is no indication that the claims could not have been discovered earlier through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(C)-(D).

While Brite has not demonstrated that any of the statutory tolling provisions apply, § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation under this subsection." Brite's state habeas petition was filed January 8, 2016, and denied June 1, 2016. *See Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013) (holding that the pleadings of pro se inmates are deemed filed at the time they are delivered to prison authorities). Accordingly, the state habeas application tolled the limitations period for 146 days, making Brite's federal petition due on June 6, 2016.

Even assuming Brite deposited his application for writ of habeas corpus in the prison mail-box on January 7, 2016 as he maintains, as opposed to January 8, 2016, the date Respondent maintains it was actually deposited, Brite's § 2254 petition is, nevertheless, untimely; therefore, relief should be barred under the AEDPA. *Lookingbill v. Cockrell*, 293 F.3d 256, 265 (5th Cir. 2002)(emphasizing that the "AEDPA relies on precise filing deadlines to trigger specific accrual and tolling provisions"); *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999)(habeas petition filed four days late was untimely); *see also Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003)(habeas petition filed one day late in a death penalty case was untimely).

Although this result may seem harsh, Brite's petition likewise fails on the merits since Brite did not make "a substantial showing of the denial of a federal right" and cannot make a substantial showing that this Court's procedural rulings are incorrect as required by FED.R.APP.P. 22 for a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

## A.  Brite's claims of ineffective assistance (Claims 1-5)

The State initially objects to petitioner's claims to the extent petitioner seeks to assert stand-alone claims of actual innocence. *Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006)(*citing Dowthitt v. Johnson,* 230 F.3d 733, 741-42 (5th Cir.2000), *cert. denied,* 532 U.S. 915 (2001); *see also Graves v. Cockrell,* 351 F.3d 143, 151 (5th Cir.2003)). Petitioner alleges "actual innocence" with respect to the first two grounds, contending that he was denied effective assistance because trial counsel instructed Erna Mauser not to testify, failed to challenge prosecutorial misconduct after Detective Miller allegedly told Erna Mauser not to testify, and failed to object when the state violated an order suppressing Dr. Kellogg's testimony in its entirety due to its violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Petitioner appears to argue that but for trial counsel's deficiencies in allowing Dr. Kellogg's testimony and excluding

Erna Mauser's testimony, Brite would have been found innocent. Accordingly, the Court addresses these claims pursuant to the Sixth Amendment.

### 1. Failure to challenge prosecutorial misconduct

In his first ground, petitioner maintains trial counsel was ineffective in instructing Erna Mauser not to testify and for failing to challenge prosecutorial misconduct after Detective Miller allegedly told Erna Mauser not to testify. Petitioner maintains that Erna Mauser would have testified that S.M. was previously abused by a teacher, notwithstanding the testimony of S.M. and her mother who both maintained that S.M. had never been abused before. Petitioner contends that Dr. Kellogg relied on the fact that S.M. had not been abused before in making her diagnosis and that Brite would not have been convicted had Erna Mauser been permitted to testify.

Brite's claims are conclusory and lacking in any support. Nothing in the record demonstrates that the prosecution knew or was involved in any attempt to prevent Erna Mauser from testifying. Further, Erna Mauser's affidavit, dated April 1, 2015, relies on hearsay, is contradictory at best and fails to clearly establish that counsel told Erna Mauser not to testify. When asked whether she told trial counsel "about the allegations that were told to Nancy Mauser that her daughter . . . had been abused by a teacher and that '[N]ancy took care of this', and

14

that the school closed down?" Ms. Mauser responded affirmatively. Also, when asked whether "Detective Liza Miller or anyone else ever ask[ed] [her] not to testify about the abuse by the teacher?" Ms. Mauser again answered affirmatively but did not clarify who allegedly told her not to testify. Further, when asked "[d]id the District Attorney or anyone else ask you not to testify in [sic] my behalf?" Ms. Mauser responded "yes," "your attorney." However, when asked directly whether trial counsel ever advised her not to testify at trial, Ms. Mauser answered, "no." These contradictory responses are insufficient to establish that either counsel or Detective Miller told Erna Mauser not to testify.

Further, even assuming trial counsel decided that Ms. Mauser should not testify and told her as much, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton*, 343 F.3d at 752-53. As trial counsel noted in his affidavit, "[a]pplicant makes a great buzz that the child had previously been molested by another person. Even if that were the case, such evidence is of doubtful admissibility in [light] of Texas Rule of Evidence 412. The other person does not go to the issue of consent in this case. Indeed, Judge Teresa Herr, the judge in Mr. Brite's case, has

excluded such evidence under Rule 412 in a subsequent case of mine." (DE 12-17, pg. 441).

In addition to failing to show that his trial counsel instructed Erna Mauser not to testify and was deficient in doing so, petitioner also fails to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Here Ms. Mauser's testimony would have demonstrated that S.M. previously was abused by another person. As trial counsel stated in his affidavit, Mr. Brite was convicted of various child sex offenses following testimony by two victims, one of whom was his own daughter, and the viewing of his video-taped police interview in which, when questioned regarding his involvement, Brite made various ambivalent statements such as: "Let me go search my heart and mind. I do not recall doing anything to [S.M.]. If I did, I am guilty as hell. I am not going to admit something I didn't do."; and "I can't see my[self] doing it." (DE 12-17, pgs. 441; 412-15). Accordingly, the Court does not find that there is a reasonable probability that, but for counsel's failure to permit Erna Mauser to testify regarding S.M. being previously abused, the result of the proceeding would have been different.

## 2. Failure to object to state's violation of suppression order

In his second ground for relief, petitioner alleges that counsel failed to object when the state violated an order suppressing Dr. Kellogg's testimony in its entirety due to its violation of HIPAA. However, the record reflects that trial counsel repeatedly objected to the introduction of this testimony. Counsel initially filed a pre-trial motion and argued against the admissibility of this evidence during a pre-trial hearing. (DE 11-15, pg. 345, 349). Trial counsel also requested written findings of fact and conclusions of law. (Id., pg. 354). During trial, counsel again objected when the State sought to introduce Dr. Kellogg's testimony. (DE 11-17, pgs. 472-73). Counsel again requested written findings of fact and conclusions of law and further, requested a running objection throughout Dr. Kellogg's testimony. (DE 11-17, pg. 479; DE 11-19, pgs. 869-71). While the trial court did not rule in counsel's favor, this hardly demonstrates that trial counsel's performance was deficient, particularly given the strong presumption that an alleged deficiency "falls within the wide range of reasonable professional assistance." *Feldman*, 695 F.3d at 378 (*quoting Strickland*, 466 U.S. at 689). Moreover, given the remaining testimony supporting Brite's conviction, Brite has not and cannot establish that but for the introduction

of this evidence, he would not have been convicted. *Strickland*, 466 U.S. at 694.

### 3. Failure to raise a collateral estoppel objection

Next, petitioner claims that his trial counsel was ineffective for failing to raise a collateral estoppel objection to testimony related to extraneous offenses from 1985. Petitioner maintains that during a pre-trial hearing the State initially agreed to quash five counts involving A.B. based on the statute of limitations but subsequently introduced testimony relating to these offenses. Petitioner maintains his trial counsel was ineffective in permitting the testimony to be introduced, arguing that trial counsel objected to this testimony based on the Sixth, rather than the Fifth Amendment.

However, in addition to filing a motion to quash these counts, Brite's trial counsel raised running objections to A.B.'s testimony regarding incidents occurring outside the statute of limitations. In particular, trial counsel objected as follows: 1) that the testimony was "barred by common law estoppel" because the State was prevented by the statute of limitations from bringing charges related to the 1985 offenses and had voluntarily dismissed the charges; 2) that the State was estopped by the "due process cause of the Texas Constitution" and the "Fifth and Fourteen Amendment due process clause of the U.S. Constitution;" and, 3) that the State was "collaterally

18

estopped under the Sixth and Fourteenth Amendments under the jeopardy clause." (DE 11-20, pg. 8; DE 12-1). The trial court admitted the evidence pursuant to TEX.CODE CRIM. PROC. ANN. art. 38.37, § 2 (Vernon Supp. 2014), which provides that evidence of other crimes, wrongs, or acts committed by a defendant against a child who is a victim of an alleged offense under Chapter 21 or Chapter 22 of the Texas Penal Code shall be admitted for its bearing on relevant matters, including the previous and subsequent relationship between the defendant and the child. Further, in response to counsel's objections, the trial court instructed the jury, both during the trial and in reading the charge, that if they heard testimony of acts of aggravated sexual assault or indecency with a child by contact, and those acts occurred prior to September 1st of 1987, that this evidence could only be used as evidence of a prior relationship between the child and the defendant and for no other purpose. (DE 11-20, pgs. 13-14; DE 12-1, pg. 11). In light of trial counsel's objections and the court's limiting instruction, Brite has failed to show that his trial counsel's performance was deficient or that he was prejudiced. *Strickland*, 466 U.S. at 694.

Brite also challenged the admission of this evidence on direct appeal, arguing that A.B.'s testimony regarding the uncharged offenses was inadmissible because the statute of

limitations had run. *Brite*, 2009 WL 1617741 at *6. In overruling Brite's objections, the Fourth Court found that the evidence was properly admitted for a limited purpose pursuant to TEX.CODE CRIM. PROC. ANN. art. 38.37, § 2, and that the jury was instructed that it could only consider acts prior to September 1, 1987. Brite raises the same issue here but fails to show how trial counsel's performance was deficient, particularly given the strong presumption that an alleged deficiency "falls within the wide range of reasonable professional assistance." *Feldman*, 695 F.3d at 378 (*quoting Strickland*, 466 U.S. at 689).

### 4. Failure to know law as to counts four, five and six

Petitioner next maintains that trial counsel was ineffective in failing to know the law as to counts 4, 5 and 6. However, count 5 was dismissed and, therefore, petitioner cannot demonstrate he was prejudiced in any way. *Strickland*, 466 U.S. at 690. In count 4, Brite was charged with and convicted of the sexual assault of A.B., a child younger than seventeen years of age, on or about the 26th Day of September, 1993. In count six, Brite was charged with and convicted of indecent contact with A.B., a female child younger than seventeen and not the spouse of the defendant, on or about the 26th day of September, 1993.

Petitioner maintains that A.B. turned fourteen on September 27, 1992 and would have still been fourteen on September 26, 1993, the date alleged in the indictment. Petitioner contends, however,

that the state was not alleging that Brite committed any acts after A.B. turned fourteen and, therefore, the "on or about" allegation does not apply. Additionally, petitioner claims that he was no longer living in the house with A.B. after August 12, 1992 and, therefore, could not have committed these offenses after that date.

Brite argued on direct appeal that the evidence was legally and factual insufficient to convict him. *Brite*, 2009 WL 1617741. In overruling Brite's objections, the Fourth Court noted in its opinion that "[t]he indictment's 'on or about' language, . . . allows the State to prove a date other than one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." *Id*. at *4. Further, notwithstanding Brite's contention that there was no evidence that Brite engaged in offensive contact after A.B. turned fourteen or after he moved out of the family home on August 12, 1992, A.B. testified that the offensive contacts continued after September 1, 1987, until her parents divorced when she was around fourteen years old. *Id*. at *3.

### 5. **Failure to secure a witness**

Petitioner also alleges that counsel was ineffective for failing to secure the testimony of Mary Ann Harris. Petitioner does not state the nature of Ms. Harris's proposed testimony.

Further, trial counsel indicated that he chose not to call Harris for the following reasons:

> She was a private therapist whom the victim saw. She was an outcry witness. Her testimony would have repeated and corroborated in part the child's testimony. She was not called as a defense witness as a matter of strategy. Her testimony would only have reinforced the complainant's testimony. I am not going to call a witness who will only help the State in its prosecution.

(DE 12-17, pgs. 440-41). Counsel's decision not to call Harris appears to be "[a] conscious and informed decision on trial tactics and strategy" which "cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton*, 343 F.3d at 752-53. In addition to failing to show trial counsel's performance was deficient because he did not call Harris as a witness, Brite also fails to show how he was prejudiced by this alleged deficiency. Brite does not indicate what Harris would have testified to, stating only that Harris was the first to see S.M. This is insufficient to establish petitioner's burden.

Finally, the TCCA denied Brite relief on each of his ineffective assistance of counsel claims on the merits. The TCCA's implicit and explicit factual findings and credibility determinations are entitled to a presumption of correctness, which may be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Marshall v. Lonberger*, 459 U.S. 422, 433

(1983); *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001).
Brite has not shown that the TCCA's decision was an unreasonable
application of either clearly established federal law or the
facts in light of the evidence presented. Consequently, Brite's
ineffective assistance of counsel claims should be denied and
dismissed with prejudice.

## B.    Brite's claim of double jeopardy (claim 6)

Lastly, petitioner contends that his prosecution on the
second and third counts violated his rights against double
jeopardy.[1]    More specifically, petitioner maintains that the
state relied on evidence of the same act to prove a violation of
two separate penal statutes.

The Fifth Amendment's proscription against double jeopardy
protects a defendant from receiving more than one punishment for
the same offense. U.S. CONST. AMEND V.    Where the same act or
transaction constitutes a violation of two separate statutory
provisions, the test applied to determine whether there are two
offenses or one is whether each provision requires proof of a
fact which the other does not.    *Blockburger v. United States*,
284 U.S. 299, 304 (1999).    Separate and distinct acts that
occurred at different times—even if committed against the same

---

[1] Petitioner also alleges that the State should have elected between counts 4
and 6; however, because petitioner is raising this issue for the first time,
he has failed to exhaust his remedies and is procedurally barred.

person—may constitute offenses independently punishable under a single statute. See e.g., id. at 301-302.

Brite was convicted of aggravated sexual assault of a child in count two which charged that Brite intentionally and knowingly caused the penetration of S.M.'s female sexual organ by his finger. Brite was also convicted of indecency with a child by contact in count three which charged that Brite intentionally and knowingly engaged in sexual contact with S.M. by touching part of S.M.'s genitals with the intent to arouse or gratify someone's sexual desire.

Brite's double jeopardy claims were previously reviewed on direct appeal by the Fourth Court of Appeals which held the following:

> "In order to prevail on a double jeopardy claim, the evidence must show that the two offenses at issue necessarily arose from 'one act which could be subject to two different interpretations.'" Martinez v. State, 212 S.W.3d 411, 422 (Tex. App.—Austin 2006, pet. ref'd) (quoting Ochoa v. State, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998)). In this case, Brite alleges that his conviction for indecency with a child by contact was based on the same conduct underlying his conviction for aggravated sexual assault of a child because both offenses arose from the '"hot wing' allegation." S.M. testified, however, that Brite touched her genital area four times including the '"hot wing' allegation." Although the indictment alleged two offenses that occurred "on or about" the same date, it is well settled that the "on or about" language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is prior to the presentation of the indictment and not so remote that prosecution is barred by the statute of limitations. See Sledge v. State, 953 S.W.2d at 256. In this case, S.M.'s testimony established three offenses

> separate from the '"hot wing' allegation" each of which
> occurred prior to the presentation of the indictment and
> within the applicable statute of limitations period.
> Accordingly, Brite's double jeopardy challenge fails, and
> his seventh issue is overruled. *See Cabral v. State*, 170
> S.W.3d 761, 764-65 (Tex. App.—Fort Worth 2005, pet. ref'd)
> (concluding no double jeopardy violation occurred where
> complainant testified regarding two separate and distinct
> incidents of abuse).

*Brite*, 2009 WL 1617741, at *9. Subsequently, the TCCA ruled on
the merits of this claim in refusing Brite's PDR.

Brite has not demonstrated that the TCCA's adjudication of
his double jeopardy claim resulted in a decision that was either
contrary to, or involved an unreasonable application of, clearly
established federal law, as determined by the Supreme Court of
the United States, or based on an unreasonable determination of
the facts in light of the evidence presented in the state court
proceeding. *Brown*, 544 U.S. at 141. Accordingly, Brite's
double jeopardy claim should be denied with prejudice.

## V. <u>Certificate of Appealability</u>

The Court next determines whether to issue a certificate of
appealability (COA). *See* Rule 11(a) of the Rules Governing §
2254 Proceedings; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36
(2003) (*citing* 28 U.S.C. § 2253(c)(1)). A COA may issue only if
a petitioner makes "a substantial showing of the denial of a
constitutional right." 28 U.S.C. § 2253(c)(2). If a district
court rejects a petitioner's constitutional claims on the
merits, the petitioner must demonstrate "that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that reasonable jurists would not debate the conclusion that Brite was not entitled to federal habeas relief. As such, a COA will not issue.

## VI. <u>Conclusion and Order</u>

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial, appellate, and habeas corpus proceedings. As a result, Jim Brite's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner Jim Brite's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 petition (DE 1) is **DISMISSED WITH PREJUDICE;**

2. No Certificate of Appealability shall issue in this case; and

3. All other remaining motions, including Petitioner's Motion for an Evidentiary Hearing (DE 17), are **DENIED,** and this case is now **CLOSED.**

**It is so ORDERED.**

**SIGNED** this 31 day of August, 2017.

**ORLANDO L. GARCIA**
**Chief United States District Judge**